1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JONNE TRICE, | ) ED CV 08-169-SH |
| | ) |
| Plaintiff, | ) MEMORANDUM  DECISION |
| | ) AND ORDER |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## I.  PROCEEDINGS

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant

1

have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a Joint Stipulation. After reviewing the matter, the Court concludes that the Decision of the Commissioner should be affirmed.

## II. BACKGROUND

Plaintiff filed an application for SSI on June 28, 2005 alleging disability since June 21, 1999 due to schizophrenia and a learning disability. (Administrative Record ("AR") 303-05). Plaintiff's application was denied initially on August 4, 2005 (AR 246-49) and on reconsideration on June 8, 2006 (AR 256-60). Plaintiff filed a timely Request for Hearing and such hearing was held on September 11, 2007 (AR 1151-84). An Administrative Law Judge ("ALJ") issued an unfavorable Decision dated September 19, 2007 (AR 48-60). Plaintiff filed a timely Request for Review of Hearing Decision/Order and the Appeals Council denied review on January 9, 2008 (AR 42-44). This action followed.

Plaintiff makes five challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred by failing: (1) to consider the opinion of plaintiff's treating psychiatrist; (2) to consider the attending psychiatrist's diagnosis; (3) to consider the findings of the Consultative Examiner; (4) to comply with Social Security Ruling 96-7p regarding the type, dosage, and side effect of medications; and (5) to consider plaintiff's mental impairment. The first three issues, as well as the fifth issue, will be considered together, as they are interrelated.

## III. DISCUSSION

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence must be more than a mere scintilla, but not necessarily a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). This Court cannot disturb the Commissioner's findings if those findings are supported by

substantial evidence, even though other evidence may exist which supports plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973); Torske v. Weinberger, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision and "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

**ISSUES Nos. 1-3 and 5: The ALJ properly considered plaintiff's treating psychiatrist, attending psychiatrist, and Consultative Examiner's diagnoses of schizoaffective disorder.**

Plaintiff contends that the ALJ failed to consider the findings of (1) plaintiff's former treating psychiatrist, Dr. Nabil Faltas, (2) plaintiff's former attending psychiatrist (signature illegible), and (3) the Consultative Examiner, Dr. Andrew J. Rooks – all of whom diagnosed plaintiff with schizoaffective disorder.[1]  Plaintiff argues that the ALJ may not ignore their findings and must consider their findings as opinion evidence.  In Issue 5, plaintiff contends that the ALJ failed to properly consider plaintiff's mental impairment.

In response, defendant contends that the ALJ properly relied on medical

---

[1] Dr. Faltas noted, however, that "the risk of drinking or using street drugs is generally a relapse of her illness...." (A.R. 759).

expert testimony, and fairly considered the remaining medical evidence.  Moreover, defendant contends that plaintiff's reliance on medical evidence generated several years before she applied for SSI benefits is irrelevant and immaterial.

Generally, a treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1998 (9th Cir. 2008) (citations omitted).  Here, the ALJ found that plaintiff suffers from severe impairments of alcohol and drug abuse that met sections 12.02 and 12.09 of the Listing of Impairments.  See 20 C.F.R. Pt. 404, Subpt. P, App 1, §§ 12.02, 12.09 (2009) (AR 53-54).   In reaching his determination, the ALJ ultimately relied upon the opinion of Dr. Joseph Malancharuvil, the medical expert witness,  who found that plaintiff's substance abuse was the reason the plaintiff was disabled under Listings 12.02 and 12.09.  Specifically, the ALJ explained that Dr. Malancharuvil's testimony regarding plaintiff's limitations "with and without drug and alcohol abuse was given great weight because [Dr. Malancharuvil] had an opportunity to review the entire record, including the testimony of the claimant and her mother." (AR 54).

Additionally, the ALJ found that plaintiff's lengthy history of drug and alcohol abuse elicited psychotic behavior, depression, and schizophrenia, among other symptoms. (AR 54) . Contrary to plaintiff's contentions, the ALJ cited to substantial evidence in plaintiff's medical records to reach this conclusion, including the 2003 findings of Dr. Faltas, plaintiff's attending psychiatrist and  of Dr. Rooks. (AR 54, citing Exhibits C11F [AR 630-650], C20F [AR 725-754], C22F [AR 758-785] and C35F [AR 881-899]). Thus, even though the ALJ arrived at a conclusion different from those of Dr. Faltas and Dr. Rooks, it cannot be said that the ALJ failed to consider such findings and diagnoses, nor did the ALJ materially err by failing to defer to a discharge summary dated December, 2000, which diagnosed

schizoaffective disorder, (with a secondary diagnosis of "R/O substance induced psychosis"). The discharge summary was nearly eight years old, and had no bearing on plaintiff's application in <u>2005</u> for SSI benefits.   Rather, the ALJ clearly articulated why he relied on the medical expert testimony instead. (A.R. 55, 57 and 58).

The underlying issue here is whether, absent drug and alcohol abuse, plaintiff suffered from a disabling schizoaffective disorder. Pursuant to 20 C.F.R. § 416.935(b)(1), the key factor in determining if drug addiction or alcoholism is a material contributing factor to disability, and whether plaintiff would have been found disabled if she were to stop using drugs or alcohol. An award of benefits is precluded when disability is based in whole or part on substance abuse. However, simply because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability automatically will also end. <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1245 (9th Cir. 1998). Therefore, the key issue in determining whether the plaintiff was disabled despite her substance abuse (and thereby entitled to benefits) was whether plaintiff would be found disabled if she stopped using drugs or alcohol.

The Listing of Impairments provide that " [t]he structure of the Listing for substance addiction disorders, 12.09, is . . . different from that for the other mental disorder listings. Listing 12.09[2] is structured as a reference listing; that is, it will

---

[2] Listing 12.09 provides:

12.09 Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.

The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.

A. Organic mental disorders. Evaluate under 12.02.

B. Depressive syndrome. Evaluate under 12.04.

C. Anxiety disorders. Evaluate under 12.06.

D. Personality disorders. Evaluate under 12.08.

E. Peripheral neuropathies. Evaluate under 11.14.

only serve to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009).

Here, the ALJ found that plaintiff additionally met the required level of severity for Listing 12.02[3], organic mental disorders. The ALJ found that the

_____

F. Liver damage. Evaluate under 5.05.

G. Gastritis. Evaluate under 5.00.

H. Pancreatitis. Evaluate under 5.08.

I. Seizures. Evaluate under 11.02 or 11.03.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09 (2009).

[3] Listing 12.02 provides:

12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain.

History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

1. Disorientation to time and place; or

2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past);
 or

3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or

4. Change in personality; or

5. Disturbance in mood; or
6. Emotional liability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

1   'paragraph A' criteria were satisfied because when alcohol and drugs are used, the
2   claimant has psychological or behavioral abnormalities with a demonstration of a
3   loss of specific cognitive abilities or affective changes, and the medically
4   documented persistence of memory impairment, perceptual or thinking disturbances
5   such as hallucinations or delusions, changes in personality, disturbance in mood, and
6   emotional liability. (AR 54).

7       Additionally, based on Dr. Malancharuvil's testimony, the ALJ found
8   "evidence showing claimant's mental disorder has resulted in marked restriction of
9   activities of daily living; marked difficulties in maintaining social functioning;
10  marked difficulties in maintaining concentration, persistence, or pace; with no
11  repeated episodes of decompensation, each of extended duration, thereby satisfying
12  the 'B' criteria." (AR 54). Finally, the ALJ found the plaintiff also met the
13  "paragraph C" criteria because "claimant has a documented history of at least 2
14  years duration causing more than minimal limitation of ability to do basic work
15  activities, and a residual disease process with such marginal adjustment so that even
16  a minimal increase in mental demands or change in the environment would be
17  predicted to cause the claimant to decompensate." (AR 54).

18

19      However,  the ALJ properly found that plaintiff's substance abuse was a

20

21      4. Repeated episodes of decompensation, each of extended duration;

22      Or

23      C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has
        caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently
        attenuated by medication or psycho social support, and one of the following:

24      1. Repeated episodes of decompensation, each of extended duration; or

25      2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in
        mental demands or change in the environment would be predicted to cause the individual to decompensate;
        or

26      3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement,
27      with an indication of continued need for such an arrangement.

        20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (2009).

28

material contributing factor to her mental impairment. When asked about plaintiff's prior diagnoses of schizoaffective disorder. Dr. Malancharuvil continued to explain that "even if you accept [the diagnosis], you'll have to conclude that [the diagnosis] is drug-induced." (AR 1179). Moreover, the ALJ found that if plaintiff stopped her substance abuse, the remaining limitations would not cause more than a minimal impact on her ability to perform basic work activities. (AR 55). Thus, the ALJ properly relied upon the testimony of Dr. Malancharuvil in reaching his ultimate finding that plaintiff's remaining mental impairment, in the absence of her substance abuse, would not result in any significant limitations impacting her ability to work.

**ISSUE No. 4: The ALJ properly considered the side effects of plaintiff's medications.**

Plaintiff asserts that the ALJ failed to consider the side effects of plaintiff's medications on her ability to work. In response, defendant argues that the ALJ reasonably relied on the medical expert's opinion testimony regarding the side effects of plaintiff's prescribed medications.

When an ALJ evaluates a claimant's limitations, he must consider evidence regarding the side effects of medications. Social Security Ruling 96-7p indicates that the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" should be considered in the disability evaluation. See 20 C.F.R. § 404.1529(c)(3)(iv). An ALJ must "consider all factors that might have significant impact on an individual's ability to work." Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) citation omitted). Such factors "may include side effects of medications as well as subjective evidence of pain." Id. At 818. Additionally, a claimant's refusal of a recommended course of treatment, or his failure to take a prescribed medication that would alleviate the alleged disabling symptoms, support a finding that the claimant's not credible. See 20 CFR §§404.1530(a) and 416.930(a).

8

Here, the ALJ did in fact consider the side effects of plaintiff's medications. When Dr. Malancharuvil testified that plaintiff's drug use significantly influenced her mental condition, the ALJ specifically asked whether plaintiff's prescribed medications were causing such affects. (AR 1174-75). In response, Dr. Malancharuvil responded that plaintiff's prescribed medications would not cause the type of manifestations that the plaintiff displayed, and attributed plaintiff's manifestations to "street drug sequela." (AR 1175).

Moreover, the ALJ gave great weight to Dr. Malancharuvil's testimony because plaintiff had a history of non-compliance with her treatment plan, including resistance to cooperate with medical staff. (AR 984, 1003, 1108). For instance, in August 2006, over a year after plaintiff filed for SSI, plaintiff's medical records indicate that she had missed all medical visits within a six-month period of time, and had a "history of no shows and being non med compliant." (AR 1108) (Exhibit C45F). Another medical report indicated that when plaintiff did appear for medical appointments, she would either refuse to answer questions, or arrive at the appointment smelling of beer and refusing to answer questions regarding her alcohol use. (AR 984, 1003) (Exhibit C44F). As such, the ALJ properly concluded that based on plaintiff's failure to comply with treatment, plaintiff was unwilling to do that which was necessary to return to substantial gainful activity, and suggested that plaintiff made a lifestyle choice not to work. (AR 57). Based on plaintiff's failure to comply with her prescribed treatment plan, the ALJ reasonably concluded that the side effects of any prescribed medications did not impact plaintiff's ability to work.

## **IV. ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed and plaintiff's Complaint is dismissed.

9

DATED: <u>May 13, 2009</u>

/ s /
_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE T JUDGE